UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                           :

MARTIN HOBBS,                                :

                         Petitioner,         :

                                  :

          -v-                         :           22-CV-2283 (JMF)

                                  :

DONITA MCINTOSH,                  :          OPINION AND ORDER

                         Respondent.      :

                                  :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Petitioner Martin Hobbs was convicted in the New York Supreme Court of Robbery in

the First Degree and sentenced to an indeterminate term of twenty years to life in prison.  He

now petitions, pursuant to Title 28, United States Code, Section 2254, for the writ of habeas

corpus, contending that his trial lawyer provided ineffective assistance in violation of the Sixth

Amendment.  ECF No. 1 ("Pet."), at 1-15.  In particular, Hobbs claims that counsel was

ineffective for failing to request a lesser-included-offense instruction on Robbery in the Third

Degree.  Pet. 5.  The state courts rejected that claim on the ground that Hobbs was not entitled to

a lesser-included-offense instruction under New York law.  This Court's province on habeas

review is to determine whether these rulings were based on an unreasonable application of

clearly established federal law.  For the reasons that follow, the Court concludes that they were

not.  Accordingly, Hobbs's petition must be and is DENIED.

**BACKGROUND**

        On September 11, 2010, a man approached Emilia Brad in the vestibule of a Chase Bank

branch in Manhattan as she withdrew cash from an ATM.  *See* ECF No. 2-6, Pet. Ex. F ("Trial

Tr."), at 35-37.[1]  The man pushed into Brad from behind, poked something into her back, stated that he had a gun, and stole her money.  *Id.* at 36-39.  Hobbs was later arrested for this incident and indicted on a single count of Robbery in the First Degree.  *See id.* at 164-65, 318-20; *see also* ECF No. 2-1, Pet. Ex. A ("State Decision"), at 3-4.  As relevant here, a person is guilty of Robbery in the First Degree "when he forcibly steals property and when, in the course of the commission of the crime . . . [d]isplays what appears to be a pistol, revolver . . . or other firearm."  N.Y. Penal Law § 160.15.  Significantly, however, "the display requirement has been construed broadly to cover a wide range of actions which might reasonably create the impression in the mind of the victim that the robber is armed with a firearm."  *People v. Lopez*, 73 N.Y.2d 214, 220-21 (1989); *see, e.g.*, *People v. Baskerville*, 60 N.Y.2d 374, 380 (1983) ("It is sufficient . . . if the victim is made to believe the object to be such a weapon or if the defendant holds or wraps the object in such a way as to create the impression that he is holding a pistol, revolver, or other firearm.").

**A.  The Trial**

Hobbs went to trial before Justice Thomas Farber of New York Supreme Court on August 13, 2015.  At trial, the prosecution presented surveillance video, photographs, and Brad's testimony, among other evidence.  *See, e.g.*, Trial Tr. 35-47, 68.  Most significant for present purposes, Brad testified: "I pulled out the cash, and then he came from behind and then I sort of got pushed."  *Id.* at 38.  Brad explained that, as the man pushed into her, she felt him poking something into her ribs and heard him state: "Give me the money, I have a gun, I have a gun."  *See id.* at 37-38.  She testified she could not see what the man was poking into her, *see id.* at 38-

---

[1]     Citations to page numbers in ECF Nos. 2, 2-1, 2-4, 2-6, 2-7, and 2-8 are to the page numbers automatically generated by the Court's Electronic Case Filing system.

39, and never said with certainty what she believed the object to be, *see id.* at 38-39, 47, 50.  Her only description of the object was that it was "blunt, not like knife sharp."  *Id.* at 39.  She emphasized, however, that she "was definitely feeling something poking me and [was feeling] fairly frightened."  *Id.*; *see also id.* at 50 (testifying that "[t]here was something concealed with his arm and [she] felt something pointing in [her] side").  Justice Farber asked Brad whether the object poking into her side could "have been a finger," *id.* at 47, to which Brad responded: "It could have been.  I chose not to chance that," *id.*  Brad added: "It could have . . . been anything, there was something pointing, he said he had a gun."  *Id.* at 50.

Hobbs was represented at trial by Toni Messina.  *Id.* at 2.  Hobbs's defense at trial was misidentification.  *Id.* at 12, 274, 276; *see also* State Decision 5.  Messina emphasized, for example, that when asked to identify the robber at a line-up, Brad "was not a hundred percent" sure whether Hobbs was the man who had robbed her.  *Id.* at 52-54; *see also id.* at 274 (arguing in summation that Brad "didn't have a full view of [the perpetrator's] face or how he looked").  Messina also highlighted discrepancies between Brad's contemporaneous description of the perpetrator and Hobbs's appearance when arrested on an unrelated charge two days before the robbery.  *See id.* at 242-43, 253 (introducing Brad's contemporaneous description of the man as "well dressed and not homeless"); *cf. id.* at 94-95 (demonstrating that Hobbs's arresting officer believed him to be "homeless").  Messina did not request an instruction to the jury on the lesser included charge of Robbery in the Third Degree, *see* ECF No. 2-8, Pet. Ex. H ("Counsel Affidavit"), at 3; *see also* Trial Tr. 255-344, which is defined as forcibly stealing property and lacks the display element required by Robbery in the First Degree, *see* N.Y. Penal Law § 160.05.

At the close of the evidence, Justice Farber instructed the jury on the elements of Robbery in the First Degree alone.  *See* Trial Tr. 318-26; *see also* N.Y. Penal Law § 160.15.  On

August 19, 2015, the jury found Hobbs guilty of that crime. *Id.* at 351. On September 28, 2015,

Hobbs was sentenced to the mandatory minimum sentence for Robbery in the First Degree for

someone with his criminal record (at least two prior violent felonies): twenty years to life

imprisonment. *See* ECF No. 2-4, Pet. Ex. D ("Sentencing"), at 11-13, 19-20.

**B.  Hobbs's Motion to Vacate the Judgment and Direct Appeal**

On December 27, 2018, Hobbs, through counsel, also filed a motion pursuant to New

York Criminal Procedure Law Section 440.10 to set aside his conviction on the ground that

Messina had provided ineffective assistance of counsel. *See* Pet. 3; *see also* ECF No. 2-7, Pet.

Ex. G ("440 Mem."), at 4. In particular, Hobbs argued that Messina's assistance was ineffective

for "fail[ing] to request that the Court charge the lesser included offense of third-degree robbery

to the jury despite there being a factual and legal basis entitling Mr. Hobbs to the charge." *Id.* In

support of the motion, Hobbs filed an affidavit from Messina, in which she admitted that "she

had no strategic reason for failing to request" an instruction on Robbery in the Third Degree. *Id.*

at 5. Messina averred that she had failed to request the charge because she "did not recognize

that the law and facts entitled Mr. Hobbs" to the submission of the charge. Counsel Affidavit 3.

Hobbs contended that that the lesser charge was the only way for him "to avoid being sentenced

as a mandatory persistent felony offender if the jury rejected the identification defense," 440

Mem. 5, which Messina affirmed to have understood, *see* Counsel Affidavit 3.

By opinion dated June 11, 2019, Justice Farber denied Hobbs's motion to vacate his

conviction. *See* State Decision at 1-11. Messina's admissions notwithstanding, Justice Farber

concluded that Hobbs did not receive ineffective assistance of counsel because, as a matter of

New York state law, he was not entitled to an instruction on the lesser-included offense of

Robbery in the Third Degree. *See id.* at 10. More specifically, citing various New York State

cases — including *People v. Grayson*, 138 A.D.3d 1250 (3d Dep't 2016), *People v. Desjardins*, 113 A.D.3d 787 (2d Dep't 2014), *People v. McNeil*, 63 A.D.3d 551 (1st Dep't 2009), and *People v. Peaks*, 297 A.D.2d 578 (1st Dep't 2002) — Justice Farber held that, even "considering the evidence in the light most favorable to defendant," there was no "reasonable view of the evidence that defendant committed the lesser charge but not the greater," as required by New York law for Hobbs to be entitled to that lesser charge. *See* State Decision 6, 9-10 (citing *People v. Johnson*, 45 N.Y.2d 546, 549 (1978)). "[B]ut for the threat of the weapon," Justice Farber reasoned, "Ms. Brad could have easily called for help." *Id.* at 9. He noted also that Brad's testimony that the object was "blunt, not like knife sharp," suggested that "there was no reason to give her property to defendant unless she in fact believed the object to be a gun." *Id.* And given the lack of "evidence to create an issue of fact that the victim did not believe the item to be a firearm," Brad's acknowledgement "that the object could have been anything [was] of no legal consequence." *Id.* at 10 (citing *People v. Howard*, 92 A.D.3d 176, 180 (1st Dept 2012)).

In July 2019, Hobbs appealed the trial court's denial of his post-conviction motion to the Appellate Division. *See* ECF No. 2-10, Pet. Ex. J. The Appellate Division denied his motion without a written decision. *See* ECF No. 2-2, Pet. Ex. B. Meanwhile, in 2018, Hobbs had filed a direct appeal raising the same issues that had been presented in the motion to vacate. *See* Pet. 2. On September 29, 2020, the Appellate Division unanimously affirmed Hobbs's conviction. *See People v. Hobbs*, 186 A.D.3d 1167 (1st Dep't 2020) ("Appellate Decision"). Regarding the ineffective assistance claim, the Appellate Division stated only that it had "considered and rejected [it]." *Id.* at 1168. On January 31, 2021, the New York Court of Appeals denied Hobbs's application for leave to appeal. *See People v. Hobbs*, 36 N.Y.3d 1051 (2021); ECF No.

2-3, Pet. Ex. C (Order Denying Leave).  Hobbs did not file a petition for the writ of certiorari to the United States Supreme Court.  Pet. 13.

## APPLICABLE LAW

### A.  The AEDPA Standard of Review

The Court's authority to grant the writ of habeas corpus is limited by Title 28, United States Code, Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Significantly, Section 2254(a) provides that habeas relief is available "*only* on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States" — that is *federal* law.  28 U.S.C. § 2254(a) (emphasis added); *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As a result, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68; *see also Lewis v. Jeffers*, 497 U.S. 764, 765 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . .").  Section 2254(d), meanwhile, delimits a federal court's review even of federal legal issues.  It provides that, "with respect to any claim that was adjudicated on the merits in State court proceedings," the writ cannot be granted unless (1) the state court's denial of the claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

It is well established that a state court decision can be "contrary to" Supreme Court precedent in either of two ways: first, "if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law" or, second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court unreasonably applies clearly established precedent "if the state court identifies the correct governing legal rule" from the Supreme Court's cases "but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.  Alternatively, "a state-court decision . . . involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see generally Richard S. v. Carpinello*, 589 F.3d 75 (2d Cir. 2009).

Notably, "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410.  That is, the issue is not whether the state court committed error, or even clear error, in applying federal law, but "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  That threshold is "substantially higher" than incorrectness. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  Specifically, where AEDPA applies, federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Put differently, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the [federal law] claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

## B. The *Strickland* Standard

As noted, Hobbs seeks habeas relief on the ground of ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must establish, first, that counsel's representation "fell below an objective standard of reasonableness," *id.* at 687-88, and, second, that counsel's performance resulted in prejudice, *see id.* at 687.  In evaluating counsel's performance, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  To meet the first prong of *Strickland*'s demanding test, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  Still, even a single "isolated error of counsel" may pass this test "if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  To satisfy the second prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  This requires that the petitioner show that "[t]he likelihood of a different result [was] substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Significantly, where the Section 2254(d) standard of review applies to a claim of ineffective assistance, a federal court's review is "doubly deferential" and habeas relief is

especially hard to obtain.  *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (internal

quotation marks omitted).  As the Supreme Court has explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and
> when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial.  Federal habeas courts
> must guard against the danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (citations omitted); *see also, e.g.*, *Knowles v. Mirzayance*, 556 U.S.

111, 123 (2009) ("The question is not whether a federal court believes the state court's

determination under the *Strickland* standard was incorrect but whether that determination was

unreasonable — a substantially higher threshold." (internal quotation marks omitted)).  Put

another way, because "[t]he *Strickland* standard . . . requires a substantial element of judgment

on the part of the state court," state courts are granted "even more latitude to reasonably

determine that a defendant has not satisfied that standard."  *Rosario v. Ercole*, 601 F.3d 118, 123

(2d Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

Applying the foregoing standards here, the Court is compelled to deny Hobbs's claim.

For starters, the claim is arguably not cognizable on federal habeas review at all.  Yes, Hobbs

nominally raises a claim under *Strickland*, which is "clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  But Hobbs makes

no claim that the state courts erroneously applied *Strickland* itself.  Instead, his claim is that the

state court was wrong in holding, as a matter of New York *state* law, that he was not entitled to a

lesser-included-offense instruction.  *See* ECF No. 2 ("Pet'r's Mem."), at 19-20.  As many courts

have held in similar circumstances, however, a federal court may "not second-guess the decision

of a . . . state court on [that state's] law."  *Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir.

9

2012); *see, e.g.*, *Nazario v. Allbaugh*, 761 F. App'x 858, 862 (10th Cir. 2019) (in nearly identical circumstances, rejecting the petitioner's invitation to "reexamine the [state court's] determination on a matter of state law"); *Davis v. Rewerts*, No. 18-1822, 2018 WL 7050237, at *1-2 (6th Cir. Dec. 19, 2018) (stating, in nearly identical circumstances, that "a state court's interpretation of state law binds a federal court sitting in habeas corpus . . . because state courts are the ultimate expositors of state law" (cleaned up)); *Soliz v. Davis*, 750 F. App'x 282, 292-93 (5th Cir. 2018) (per curiam) (holding that federal courts must "defer to a state court's determination that an objection would have been meritless under state law because in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law" (cleaned up)); *Freeman v. Sloan*, No. 16-3933, 2017 WL 3613849, at *3 (6th Cir. May 23, 2017) (denying a certificate of appealability from a district court decision holding, in nearly identical circumstances, that the petitioner's "argument regarding the trial court's instruction was a non-cognizable complaint concerning a state court's application of state law"); *see also, e.g.*, *Cann v. Trierweiler*, No. 20-CV-10163, 2020 WL 6393833, at *5 (E.D. Mich. Nov. 2, 2020); *Johnson v. Colvin*, No. 15-CV-5466 (PKC), 2018 WL 6250510, at *7-8 (E.D.N.Y. Nov. 29, 2018); *Epps v. Emmons*, No. 18-CV-0115, 2018 WL 11251652, at *7 (N.D. Ga. May 9, 2018).

Assuming that the Court can review the state court's decision as to state law at all, it would owe *at least* as much deference to the decision as it would to a state court's decision on federal law (if not more).[2]   That is, the question would not be whether this Court would have

---

[2]   That conclusion is consistent with *Davis v. Strack*, 270 F.3d 111 (2d Cir. 2001), and *Kimmelman v. Morrison*, 477 U.S. 365 (1986), cited by Hobbs for the proposition that where the ground for habeas relief is the right to the effective assistance of counsel, "federal courts may grant relief 'regardless of the nature of the underlying attorney error.'"  Pet'r's Mem. 13 (quoting *Kimmelman*, 477 U.S. at 383).  *Kimmelman* did not involve a state-law issue at all.  And while the *Davis* did consider the state courts' decisions as to state law, it applied the AEDPA standard, *see* 270 F.3d at 132-33, and explicitly reaffirmed that "federal courts must of course defer to

reached the same conclusion as Justice Farber with respect to Hobbs's Section 440 motion, let alone whether it would have granted a request for an instruction on Robbery in the Third Degree at trial in the first instance.  Instead, Hobbs would have to show, at a minimum, that the state court's ruling with respect to New York law was "objectively unreasonable."  *Williams*, 529 U.S. at 409.  That is, he would have to show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103; *see also, e.g.*, *Upchurch v. Bruce,* 333 F.3d 1158, 1166 (10th Cir. 2003) (holding that counsel was not ineffective for failing to raise an argument on direct appeal because the argument "would not have been plainly meritorious" given the unsettled nature of state law); *Lucas v. Johnson,* 132 F.3d 1069, 1079 (5th Cir. 1998) (holding that counsel's failure to object did not constitute deficient performance where, at the time of trial, the relevant state law was unclear); *cf. Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (noting, in the habeas context, that "counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors" (internal quotation marks omitted)).

Hobbs cannot do so.  Indeed, that conclusion follows from the fact that Justice Farber relied on several New York state appellate court decisions holding, on nearly identical facts to those in this case, that a trial court properly denied instructions on the lesser-included offense of

---

state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional," *id.* at 123 n.4.  In fact, the court concluded that the writ could not be justified "under the 'contrary to' clause of § 2254(d)(1) because there [was] no indication that the Appellate Division construed" the federal legal claim at issue, namely "the due process clause in a manner 'opposite to' the Supreme Court's rulings."  *Id.* at 133.

Robbery in the Third Degree.  *See* State Decision 9-10 (citing, among others, *McNeil*,

*Desjardins*, *Peaks*, and *Grayson*).  *McNeil* and *Grayson* are instructive.  In the former, the

Appellate Division upheld a refusal to instruct on Robbery in the Third Degree where the victim

had testified that the defendant "simulated a firearm by gesturing with his hand in his pocket and

threatened to shoot her."  63 A.D.3d at 551.  Similarly, in *Grayson*, the Appellate Division held

that no reasonable view of the evidence warranted a lesser included offense charge where the

robber had handed a bank teller a note stating that he had a gun and kept his hands "in his

pocket[s] pushed forward."  138 A.D.3d at 1251-52.  Hobbs seeks to distinguish these cases on

the ground that he approached Brad from behind and, thus, she "never saw the object."  Pet'r's

Mem 19.  But the victims in *McNeil* and *Grayson* never saw the objects at issue either.[3]

    *McNeil* and *Grayson*, not to mention *Peaks* and *Desjardins*, are fatal to Hobbs's

arguments for habeas relief.[4]  It is immaterial that Hobbs can cite some New York State cases

---

[3]    It is well settled under New York law that the display requirement can "be satisfied in a
wide array of situations in which defendants did not actually show their victims firearms."  *Bell
v. Napoli*, 08-CV-9900 (PGG)(MHD), 2010 WL 8039333, at *13 (S.D.N.Y. Aug. 24, 2010),
*report and recommendation adopted*, 2011 WL 6097729 (S.D.N.Y. Dec. 7, 2011).  Indeed, "the
victim's perception need not [even] be visual" so long as the object is consciously displayed and
that display is "witnessed in some manner" — including by "touch or sound" — by the victim.
*People v. Lopez*, 73 N.Y.2d 214, 220 (1989).  Here, Brad testified unequivocally that she felt the
robber press a blunt object against her side when he announced that he had a gun and demanded
her money.  *See* Trial Tr. 38-39.  Moreover, bank surveillance photographs depicted the robber
with his arm concealed within his shirt and pointing something toward Brad.  *See* Trial Tr. 43.

[4]    Although not cited by Justice Farber, *People v. Young*, 119 A.D.3d 406 (2014), is also
instructive.  There, the Appellate Division found that the trial court had "properly declined to
charge third-degree robbery as a lesser included offense of first-degree robbery" when "there
was no reasonable view of the evidence 'that defendant used any force other than the display of
what appeared to be a firearm.'"  *Id.* at 406 (quoting *People v. Santiago*, 303 A.D.2d 321 (1st
Dep't 2003)).  Notably, this Court later denied Young's habeas petition contending that the trial
court's denial of the lesser-included-offense instruction violated his constitutional right to due
process.  *See Young v. Great Meadow Corr. Facility Superintendent*, No. 16-CV-1420, 2019 WL
636952, at *8-9 (S.D.N.Y. Jan. 18, 2019) (noting that even if the lesser-included offense claim
were a cognizable Due Process claim, for petitioner to be entitled to the lesser charge, he "would
need to show that the jury could have found that he forcibly stole property . . . but did not display

that arguably support his arguments for the lesser-included-offense instruction.  *See* Pet'r's Mem.

17 (citing *People v. Rivera*, 77 A.D.3d 483 (1st Dep't 2010)); ECF No. 8, at 7 (citing *People v.*

*Jenkins*, 67 A.D.2d 932 (2d Dep't 1979)).  For one thing, the cases are arguably distinguishable

— and, in the case of *Rivera*, was distinguished by Justice Farber — on the ground that there

was, unlike here, evidence suggesting that the object displayed was *not* a firearm, *see* State

Decision 7-8, or evidence that the physical force used to commit the robbery was not the

weapon, *see Jenkins*, 67 A.D.2d at 933.  For another, at most, these cases would establish that

New York courts have not been entirely consistent in their approach to the relevant question.

But that would not be enough for Hobbs to claim relief.  *See, e.g.*, *Love v. Smith,* No. 08-CV-

3746 (BMC), 2009 WL 2422384, at *7 (E.D.N.Y. Aug.6, 2009) ("Because there is no clear state

rule on whether the stop-consideration language must be included, counsel's decision not to

object to the justification charge did not constitute ineffective assistance, and this Court therefore

cannot hold that the [state court's] ineffective assistance determination was either contrary to, or

an unreasonable application of, the *Strickland* standard.").  So too, it is immaterial that Justice

Farber relied on some cases examining whether evidence was sufficient to support a charge of

Robbery in the First Degree, in which context courts draw all reasonable inferences in the

government's favor, as well as cases examining whether a defendant was wrongly denied a

lesser-included-offense instruction, in which context courts draw all reasonable inferences in the

defendant's favor.  Put simply, in light of *McNeil*, *Grayson*, and other such cases, the Court

cannot say that Justice Farber's decision was "so lacking in justification that there was an error

---

what appeared to be a pistol, revolver . . . or other firearm while doing so" (cleaned up)),
*adopted*, 2019 WL 632753 (S.D.N.Y. Feb. 14, 2019).

. . . beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.  That dooms Hobbs's request for relief under Section 2254.

## CONCLUSION

For the reasons stated above, Hobbs's petition for the writ of habeas corpus is DENIED. At bottom, he asks the Court to second guess the state courts' decisions as to an issue of state law.  Arguably, the Court may not do that.  To the extent the Court can, it owes deference to the state court and cannot say that the relevant state court's decision was objectively unreasonable.

As Hobbs has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).  In addition, this Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: December 9, 2022
     New York, New York

_____
JESSE M. FURMAN
United States District Judge